UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EILEEN M.,

Plaintiff,

                                 Case No. 6:22-cv-06058-TPK

    v.

COMMISSIONER OF SOCIAL                OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on December 9, 2021, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 9), and the Commissioner has filed a similar motion (Doc. 10).  For the following reasons, the Court will **DENY** the Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

## I.  BACKGROUND

    Plaintiff filed her applications for benefits on August 7, 2018, alleging that she became disabled on August 30, 2010. After initial administrative denials of her applications, Plaintiff appeared before an Administrative Law Judge for telephone hearings held on April 1, 2021 and May 7, 2021.  Plaintiff testified at the first hearing, and she, as well as a medical expert and a vocational expert, testified at the second.

    In a decision dated May 26, 2021, the Administrative Law Judge denied benefits.  He found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and that she had not engaged in substantial gainful activity since the alleged onset date.  Next, he determined that Plaintiff had severe impairments including unspecified depressive disorder, rule-out persistent depressive disorder and major depressive disorder, generalized anxiety disorder, panic disorder, unspecified personality disorder, and rule-out dependent personality disorder.  He also concluded, however, that those impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with various nonexertional limitations, including an inability to do more than simple, unskilled

work activity which only requires one, two, or three-step instructions and having no more than occasional changes in the work setting.

Plaintiff's past relevant work including being a hospital admissions clerk and a medical coding clerk. Considering her mental limitations, and relying on the testimony of the vocational expert, the ALJ found that Plaintiff could not perform either of those jobs, but she could work as a cook helper, commercial cleaner, and a hospital food service worker, all medium jobs which existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff did not meet the requirements for disability under the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises two issues, which she states as follows;

1. The ALJ failed to obtain physical medical opinion evidence retroactive to the period relevant to the DIB claim, which was from the alleged onset date of August 30, 2010 through the date last insured of December 31, 2015.

2. The ALJ failed to consider all of Plaintiff's impairments and their attendant limitations, whether the impairments were determined severe or nonsevere, in the balance of his sequential evaluation.

(Doc. 9-1, at 1).

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff's testimony at the administrative hearings can be summarized as follows. Plaintiff, who was 60 years old at the time of the first hearing, first testified that she had earned an associate's degree and that she lived with her mother. She last worked in 2009 or 2010, and said she could no longer work because of severe gastrointestinal issues, anxiety, and depression. More recently, she also was having to care for her mother. She had been taking classes to prepare her for employment but they were very taxing and also involved computer technology that she had trouble dealing with.

Plaintiff identified anxiety as her most serious condition, and said that her family also stressed her out. She did socialize with a friend and went shopping and played games on her phone. Her medication helped somewhat with her anxiety. On a typical day she attended class online, did hobbies, or socialized. She was able to clean, do laundry, and cook, but she occasionally missed appointments and needed reminders to take her medications. Plaintiff said there were some side effects from her medications such as shakiness in her hands and difficulty sleeping. Finally, she testified to panic attacks and shortness of breath, which she thought might be related. At the second hearing, she testified only briefly, answering questions about some of her past work.

The medical expert, Dr. Efobi, a board-certified psychiatrist, said the records reflected three diagnoses: unspecified depressive disorder, rule out persistent depressive disorder, and major depressive disorder; generalized anxiety disorder and panic disorder; and unspecified personality disorder to rule out dependent personality disorder.  He did not think her symptoms met the criteria for disability under any section of the Listing of Impairments, but she was mildly to moderately impaired in performing simple and complex tasks, mildly impaired in interacting with others, mildly to moderately impaired in maintaining concentration and pace, and mildly impaired in caring for herself.  He concluded she would do best with simple tasks which involved little to no stress, meaning no more than occasional changes in the work setting.  Dr. Efobi also said the records indicated that she did well with treatment.

The vocational expert, Joseph Young, testified that Plaintiff's past jobs could be classified as hospital admitting clerk and medical coding clerk, both sedentary jobs performed at either the skilled or semi-skilled level.  He was then asked questions about a person with Plaintiff's vocational profile who was limited to simple, unskilled work that involved fairly simple instructions and only occasional changes to the work setting.  In response, he testified that such a person could work as a cashier, kitchen or cook helper, commercial cleaner, and hospital food service worker.  If the person were off task for 20% of the time, however, he or she could not work, but if the person could have only limited contact with others, some of these jobs, and others as well, would be available.  Finally, he testified that missing more than one day of work per month or more than seven days per year would preclude competitive employment.

## B.  Medical  Evidence

### 1.  Treatment records

The record in this case is extensive, but Plaintiff's memorandum focuses only on particular portions of that record pertinent to her arguments.  The Court adopts the same approach.

As Plaintiff notes in her summary of the medical evidence, beginning in 2010, the year of her alleged disability onset date, she was being treated for both physical and psychological impairments, including depression, anxiety, bilateral leg pain, and generalized body pain.  Fibromyalgia was diagnosed in 2011 as well as bursitis of the left hip and a suspected pinched nerve in her arm.  At one point, her GAF was rated at 44.  Her symptoms included insomnia and auditory hallucinations as well as increased fatigue.

Plaintiff's reports of insomnia continued into 2018, which is the relevant date for her SSI application.  The records also indicate continuing problems with anxiety and depression as well as difficulty concentrating and remembering things.  She was diagnosed at one point with sleep apnea.

### 2.  Medical Opinions

Both physical and psychological consultative examinations were performed on

September 4, 2018. Dr. Ransom, the psychologist, concluded that Plaintiff did not have any mental limitations and no diagnosable psychiatric condition. Dr. Toor, who did the internal medicine exam, also found no measurable limitations other than some limited lumbar range of motion. The state agency reviewers found that Plaintiff had no severe physical impairments and had only mild limitations in interacting with others. Dr. Ransom did a second consultative examination in 2021, this time finding that Plaintiff had very mild symptoms which did not limit her activities.

On July 10, 2020, Dr. Newman, a treating source, completed a medical source statement noting that Plaintiff had been her patient for three years and was being treated for depression, anxiety, and personality disorder. Dr. Newman reported that Plaintiff was not capable of dealing with any level of work stress, that she could sit, stand, or walk for less than two hours in a workday, that she would have to take 15-minute breaks every two hours, that she could never lift 20 pounds or more, that she would miss three days of work per month, and that she could not engage in competitive employment on a sustained basis. (Tr. 3433-36).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Physical Limitations present from 2010 to 2015

In her first claim of error, Plaintiff notes that the ALJ did not call a medical expert to express an opinion on her physical limitations.  Further, she points out that Dr. Toor's internal medicine exam was conducted in 2018 and he expressed no views about her physical limitations, if any, for the time period from 2010 to 2015, nor did the state agency reviewer, Dr. Koenig.  Nevertheless, the ALJ concluded that she had no physical limitations for any of the relevant time frames, a decision which Plaintiff asserts is erroneous due to the lack of any opinion evidence relating to the earlier years.  The Commissioner responds that Plaintiff has failed to identify any specific physical impairment, such as her kidney transplant or her fibromyalgia, which caused limitations serious enough to be classified either as a medically determinable impairment or as a severe impairment during the 2010 to 2015 time period.

The ALJ provided the following rationale for his determination on this issue.  First, he concluded that "claimant's fibromyalgia, joint pain, kidney transplant, right foot fracture, obstructive sleep apnea, diabetes mellitus, hypertension, restless leg syndrome, and irritable bowel syndrome are not severe impairments."  (Tr. 18).  He cited to evidence that Plaintiff had fully recovered from her transplant and to negative diagnostic imaging that appears in various portions of the record.  Additionally, as to fibromyalgia, the ALJ noted that "on clinical examination, Plaintiff displayed no tender points" and that "tender points are required for a proper diagnosis of fibromyalgia."  *Id*.  He also discussed her foot fracture (which occurred well after the expiration of her insured status) and commented that several of her impairments, like restless leg syndrome and diabetes, were controlled with medication.  *Id*.  Finally, he found Dr. Toor's opinion to be persuasive, although he did not relate it to any particular time frame.  (Tr. 19).

As Plaintiff notes, there is authority for the proposition that when the medical record is insufficient to permit an ALJ to make a proper decision as to a claimant's impairments or their severity, the ALJ has an affirmative duty to develop the record further.  *See, e.g., Lewis v. Comm'r of Soc. Sec.*, 2018 WL 3655780 (W.D.N.Y. Aug. 2, 2018); *see also Plisko v. Comm'r of Soc. Sec.*. 2020 WL 428059, at *5 (W.D.N.Y. Jan. 28, 2020) ("Absent medical evidence of a plaintiff's functional limitations, '[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion,'" *quoting Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).  But that is not what happened here.

The ALJ properly noted that this record contains, particularly for the 2010-15 time frame, a number of diagnoses, but no indication at all that any of them caused functional limitations.  In fact, the record suggests just the opposite - that after her kidney transplant, Plaintiff had no further complications from kidney disease or the transplant itself.  Additionally, as more fully discussed below, it is not clear that the record contains findings from which a proper diagnosis of fibromyalgia can be made, thus potentially justifying his determination that it was not a medically determinable impairment.  Plaintiff has not pointed to any other medically

determinable physical impairment which existed during those years, nor has she shown that she had functional limitations which are inconsistent either with the ALJ's finding that she had no exertional impairments or his determination that she could perform jobs that involved medium work.  Under these particular circumstances, the ALJ did not need medical opinions in order to make his determination.  *See, e.g., Cheryl C. v. Kijakazi*, 662 F. Supp. 3d 181, 191 (D. Conn. 2022) ("an ALJ cannot rely upon a plaintiff's statements of symptoms, a diagnosis, or a medical opinion, no matter how compelling, to establish the existence of a medically determinable impairment").  And, as the Commissioner notes, it is the claimant's burden to establish the existence of a medically determinable impairment.  *See Penny M. v. Kijakazi*, 2022 WL 3997745, *4 (N.D.N.Y. Aug. 31, 2022).  The Court therefore finds no error in the ALJ's determination that, during the 2010-2015 time frame, Plaintiff had no exertional limitations arising from any medically determinable impairments.

## B.  Limitations Arising from Nonsevere Impairments

As her second claim of error, Plaintiff first notes that in order for her to be found not disabled, she had to be capable of medium work due to her age.  Next, she points out that even though the ALJ found she had no severe physical impairments, he still had to account for any limitations arising from her nonsevere impairments.  Because the ALJ's discussion of her residual functional capacity focused solely on her mental impairments, she contends that it is obvious that the ALJ gave no consideration to the question of whether her nonsevere physical impairments - or, in the case of fibromyalgia, an impairment which the ALJ found not to be medically determinable (a conclusion she disputes) - prevented her from performing the exertional demands of medium work.  The Commissioner, in response, argues that the ALJ did take those impairments into account when crafting the residual functional capacity finding, and that substantial evidence supports his determination that none of those impairments caused any exertional limitations.

It is true, as Plaintiff argues, that the record does contain both a diagnosis of fibromyalgia and an indication that there was tenderness at various trigger points, although the notes do not recite the number of trigger points, a fact which apparently led the ALJ to conclude that it was not a medically determinable impairment.  Regardless, however, of whether the ALJ mistakenly concluded that the record did not support a diagnosis of fibromyalgia, the Commissioner is correct that nothing in any of the treatment notes suggests that the limitations arising from either that or any other physical impairment were significant enough to prevent Plaintiff from doing medium work.  The Commissioner also correctly points out that the ALJ specifically recited that he considered all of her impairments, whether severe or not, when he assessed her residual functional capacity.  *See* Tr. 19.  Although the ALJ did not specifically discuss the physical impairments in his later discussion, substantial evidence does support his conclusion that those impairments, being nonsevere, did not "significantly limit[] [her] physical or mental ability to do basic work activities," *see* 20 C.F.R. § 404.1520(c).  That is enough to sustain his decision and support a decision in this case in the Commissioner's favor.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion (Doc. 10), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**